IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:21-CV-135

| | |
|---|---|
| MICHAEL JOSEPH COSTABILE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>KEITH FOGLEMAN, an individual and USTOPIT, LLC, a North Carolina Limited Liability Company,<br><br>Defendants. | **COMPLAINT FOR PATENT INFRINGEMENT, SEEKING DAMAGES AND INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Michael Joseph Costabile ("Plaintiff") alleges as follows:

### NATURE OF THE ACTION

1. This action arises under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.*, from Ustopit, LLC ("Ustopit") and Keith Fogleman's ("Fogleman," collectively, "Defendants") direct and indirect infringement of U.S. Patent No. 7,920,052 (the "'052 Patent") and U.S. Patent No. 10,504,300 (the "'300 Patent"), and seeks damages and injunctive relief under 35 U.S.C. §§ 271, 281, 283-285.

### THE PARTIES

2. Plaintiff is an individual residing in the State of North Carolina with his residence in Oak Island, North Carolina.

3. Upon information and belief, Ustopit is a limited liability company organized and existing under the laws of the State of North Carolina, with its principal place of business at 3504 Wordsworth Place, Raleigh, NC 27609.

4. Upon information and belief, Fogleman is an individual residing in the State of North Carolina with his residence at 3504 Wordsworth Place, Raleigh, NC 27609. Upon information and belief, Fogleman is the founder and manager of Ustopit.

## JURISDICTION AND VENUE

5. This is an action for patent infringement arising under the patent laws of the United States of America, 35 U.S.C. §§1, *et seq.*, including § 271. This Court has subject matter jurisdiction over the matters asserted herein under 28 U.S.C. §§ 1331 and 1338(a).

6. This Court has personal jurisdiction over Defendants at least because, upon information and belief, Ustopit is organized under the laws of the State of North Carolina, with its principal place of business in this District, and Fogleman resides in this District.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b) at least because Ustopit is incorporated in this State and in this District, Fogleman resides in this District, and acts amounting to or in furtherance of patent infringement have been committed in this District or Defendants are subject to personal jurisdiction in this District.

## FACTUAL BACKGROUND

8. Plaintiff is the founder and President of Precision Time Systems, Inc. ("PTS"), a designer and distributor of sports monitoring and timing systems, including its patented Precision Time System product ("PTS product"), which Plaintiff founded in 1993. Using his experience both as a basketball referee and a licensed Amateur Radio Operator, Plaintiff developed his first sports monitoring and timing system in his home shop in the early-to-mid-1990s.

9. Plaintiff became a basketball referee in 1981. He refereed basketball games at a variety of levels, culminating in refereeing for the National Basketball Association ("NBA"). In 1990, Plaintiff blew a whistle on a foul in the last moments of an NBA game between the Milwaukee Bucks and Philadelphia 76ers that resulted in Charles Barkley making two free throws and winning the game for the 76ers by a single point. This was a highly contested call, because it could not be established whether the whistle had been blown before or after the game clock buzzer went off, ending the game.

10. Due to that whistle incident, Plaintiff identified a problem with the existing referee technology. In or around 1991, Plaintiff began work in his home shop on a prototype whistle-activated timing system. In or around 1993, Plaintiff formed PTS. Then, in or around 1995, launched the "PTS Generation 1" product, which functions via a microphone near a referee's whistle and a belt pack worn by a referee. Plaintiff obtained a patent on that invention, which stops the game clock when a referee's whistle is blown and starts the clock when a button on a referee's belt pack is activated.

11. The PTS Generation 1 was used in or around March 1995, by the North Carolina High School Athletic Association during their basketball state championships, with great success.

12. In or around 2006-2007, Plaintiff prototyped and refined a new device incorporating tracking and recording capabilities to create a new system. In or around 2008, Plaintiff finalized the new system, which he would eventually sell as the PTS Generation 3 system, and later systems.

## '052 PATENT

13. As is customary to protect his investment in the development of such an innovative product, Plaintiff, through counsel, on October 3, 2008 filed an application for a U.S. Patent, Application No. 12/286,999.

14. This patent application was published on April 8, 2010, with the Publication No. US-2010/0085167 A1.

15. Subsequently, on April 5, 2011, the '052 Patent, entitled "SPORTS MONITORING AND TRACKING SYSTEM," was issued to Plaintiff. A true and correct copy of the '052 Patent is attached to this Complaint as Exhibit 1, and incorporated by reference herein. Plaintiff is the sole named inventor and assignee of the '052 Patent, and is the sole owner thereof, and holds all rights, title and interest in that patent.

## '300 PATENT

16. Plaintiff continued his development of timing products for sporting events, and on

or around September 4, 2015 filed a Patent Cooperation Treaty ("PCT") patent application PCT/US2015/039693 for a sports event time clock control system in which sonic fingerprints are used to activate the clock.

17. This PCT application was published on March 9, 2017, with Publication No. WO2017/039693.

18. On January 11, 2018, the PCT application entered the U.S. National Stage and became U.S. Patent Application No. 15/743,803.

19. This patent application was published on July 19, 2018, with Publication No. US 2018/0204391 A1.

20. Subsequently, on December 10, 2019, the '300 Patent, entitled "SYSTEM FOR REMOTELY STARTING AND STOPPING A TIME CLOCK IN AN ENVIRONMENT HAVING A PLURALITY OF DISTINCT ACTIVATION SIGNALS," was issued to Plaintiff. A true and correct copy of the '300 Patent is attached to this Complaint as Exhibit 2, and is incorporated by reference herein. Plaintiff is a named inventor of the '300 Patent, along with Dennis Brady Whitley. Mr. Whitley is a consultant of PTS and has assigned all his rights in the '300 Patent to Plaintiff, and Plaintiff holds all rights, title and interest in that patent.

DEFENDANTS' KNOWLEDGE OF PLAINTIFF'S PATENTED INVENTIONS

21. Defendants are well aware of the '052 Patent and '300 Patent and have continued their unauthorized infringing activity despite this knowledge.

22. Fogleman has been a basketball referee for many years, and, on information and belief, in that role Fogleman has had unique access to PTS products, including PTS Generation 3 and later systems, and associated instruction and training manuals, and product specifications.

23. On information and belief, on or around 2015-2016, Defendant Fogleman, who was employed by Major Display Scoreboards at the time, met with Tim Bennett, the Athletic Director of Chapel Hill High School in Chapel Hill, North Carolina. On information and belief, Fogleman took possession of Chapel Hill High School's PTS product claiming he would repair and return the system to Mr. Bennett and Chapel Hill High School.

24. On information and belief, in or around 2016, Fogleman instead took the PTS product to Glen Whitaker, an engineer at Major Display Scoreboards, and asked Mr. Whitaker to reverse engineer the Plaintiff's product, so that Fogleman could develop and sell an identical competing system to Plaintiff's patented device. On information and belief, Fogleman also provided Whitaker with detailed technical specifications regarding the PTS product.

25. On information and belief, on or around November 15, 2016, Mr. Whitaker discovered that Plaintiff's PTS product was protected by U.S. Patents. Upon discovering that Plaintiff's product was patented, Mr. Whitaker informed Defendant Fogleman that because the PTS products were protected by U.S. Patents he refused to reverse engineer the product for Fogleman.

26. On information and belief, despite his knowledge of Plaintiff's patents, including the '052 Patent, and armed with his intimate knowledge of Plaintiff's products gleaned from his years using Plaintiff's patented products as a referee, and his improper inspection and analysis of those PTS products, Fogleman eventually approached Nexus Technologies, Inc. ("Nexus"), who agreed to reverse engineer and create a replica of the PTS product incorporating the inventions claimed in the '052 and '300 Patents. On information and belief, Nexus employee, Brian Langford supervised the reverse engineering, on behalf of Nexus. The result was the Accused Products (defined below at ¶36).

27. On information and belief, Fogleman formed Ustopit on or about March 3, 2021 to develop, market and sell the Accused Products (defined below at ¶36). On information and belief, Fogleman and Ustopit each have in the past and continue to market and offer for sale Accused Products under the name, WhistleStop (whistlestopworks.com/product).[1]

## PLAINTIFF'S NOTICE OF INFRINGEMENT TO DEFENDANTS

28. In or around June 2021, Plaintiff was informed that Fogleman, on behalf of himself and Ustopit, presented and offered for sale the Accused Products (defined below at ¶36)

---

[1] The trademark WhistleStop is owned by Ustopit. On information and belief, the website whistlestopworks.com is owned by Ustopit.

at a basketball camp in South Carolina.

29. In or around, June 2021, Plaintiff learned that Fogleman had failed to return the PTS product to Chapel Hill High School. Plaintiff reached out to Major Display Scoreboards regarding that unreturned system, and eventually received the system later that month.

30. On or about June 25, 2021, Plaintiff notified Defendants of their potential infringement of the '052 and '300 Patents by way of a letter sent by certified mail, return receipt requested, to Fogleman in Raleigh, North Carolina, identifying the '052 and '300 Patents and providing notice that Defendants potentially infringed the patents.

31. On information and belief, Fogleman, on behalf of himself and Ustopit, received Plaintiff's June 25, 2021 letter on or about June 30, 2021, when he signed the return receipt.

32. On or about July 13, 2021, Plaintiff's counsel communicated with Defendants' counsel, Justin Nifong, regarding Defendants' infringement of the '052 Patent. Mr. Nifong informed Plaintiff's counsel that he believed that Defendants had designed around the '052 Patent, and therefore denied any infringement.

33. In or around mid-August 2021, Plaintiff became aware that Defendants had launched the Accused Products (defined below at ¶36) and that they did in fact infringe one or more claims of the '052 Patent and the '300 Patent.

34. On information and belief, Defendants were aware of the '052 and '300 Patents at least as early as on or about June 30, 2021, when Defendants received Plaintiff's letter. As such, Defendants, at least since then, have continued to willfully, wantonly, and deliberately engage in acts of infringement of the '052 and '300 Patents permitting increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

35. Despite Plaintiff's attempt to seek a resolution with Defendants, Defendants have stopped responding to Plaintiff. On information and belief, Defendants had pre-suit knowledge of the '052 Patent and '300 Patent and acted egregiously in that they did nothing to avoid infringement and, in fact, continued to make, use, sell, and/or offer for sale infringing products, and continue their ongoing willful infringement of the '052 Patent and '300 Patent. As such,

Plaintiff has brought this action to seek just compensation for Defendants' past and ongoing infringement of the '052 Patent and '300 Patent and seeks appropriate injunctive relief.

## DEFENDANTS' PRODUCTS

36. Defendants make, use, sell, offer for sale, and/or import into the United States and this District sports monitoring and tracking systems that infringe the '052 Patent and '300 Patent. These systems (the "Accused Products") include the "WhistleStop" product advertised and offered for sale on the website https://www.whistlestopworks.com/("Defendants' website"). Upon information and belief, these systems can be purchased or otherwise acquired anywhere in the United States, directly from Defendants' website. Image 1, below, is part of a screenshot from the above website showing these systems offered for sale online.[2]



## CLAIMS FOR RELIEF

37. Defendants have been and are now infringing, and/or will continue to infringe, claims covered under the '052 Patent and '300 Patent in this Judicial District and elsewhere in the United States by, among other things, making, using, importing, selling, and/or offering for sale the Accused Products.

---

[2] Screenshot as of September 1, 2021 at 1:55 p.m. EDT.

4557646

7

38. In addition to directly infringing the '052 Patent and '300 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, or both, Defendants indirectly infringe the '052 Patent and '300 Patent by instructing, directing, encouraging, and/or requiring customers, purchasers, and users to directly infringe the '052 Patent and '300 Patent, either literally or under the doctrine of equivalents, by making, using, offering for sale, and/or selling the Accused Products.

## COUNT I

*Direct Infringement of the '052 Patent pursuant to 35 U.S.C. § 271(a)*

39. Plaintiff repeats, realleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint, as if fully set forth herein.

40. On information and belief, Defendants have directly infringed, and continue to directly infringe at least Claims 1-5, 10 and 15 of the '052 Patent in violation of 35 U.S.C. § 271(a).

41. Defendants' infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

42. Defendants' acts of making, using, importing, selling, and/or offering for sale infringing products have been without the permission, consent, authorization, or license of Plaintiff.

43. Defendants' infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of the Accused Products.

44. The Accused Products embody the patented invention of the '052 Patent and infringe the '052 Patent because they constitute sports monitoring and tracking systems utilizing remotely actuated game clock controls with coded identification carried by a plurality of officials and a signal processor to combine the control signals with timing signals.

45. On information and belief, every element of at least Claims 1-5, 10 and 15 of the '052 Patent is practiced by the Accused Products.

46. For example, the Accused Products infringe Claim 1, as they are a monitoring and

tracking system for use in sports events that uses a plurality of signal generators and plurality of officials, and the signal generators are adapted to be carried by officials. The Accused Products have a control signal from signal generators that would have to be individually identifiable in order to display signal strength of individual officials. The Accused Products also have a timer on the signal generator and/or game clock, the time of play of which is controlled by the identifiable control signals. The Accused Products have the ability to "recall previous time," which requires a time record of individually identifiable control signals, in other words, whistle blows. Accordingly, the Accused Products embody all elements of at least Claim 1 of the '052 Patent.

47. As can be seen from the images and schematics shown below[3] that were pulled from Defendants' website (www.whistlestopworks.com/products), the Accused Products include a whistle and a belt pack worn by referees, with referees blowing a whistle to stop the game clock. As can be seen in the "WP/AP Diagnostics and Pairing" schematic, each official's signal is unique. Also, on information and belief, the Printed Circuit Board ("PCB") of the Accused Products includes a clock generator and internal memory or storage that would automatically generate a time stamped record upon the blowing of a whistle and store information. The Accused Products would inherently record the identity of the initiator when collecting the records for the "recall previous time" functionality advertised on Defendants' website. In addition, the Accused Products also include SD Card and USB outputs that allow for records to be exported and stored. The Accused Products also include internet access and internet connections, such as an ethernet port, which would allow time-stamped data to be transmitted anywhere via the internet connection, including a remote basketball association office location to be used and stored. As seen in the images below, the Accused Products also "update[] like an app on your phone." Accordingly, the Accused Products embody all elements of at least Claims

---

[3] All images below are screenshots from the Defendants' website, unless otherwise stated.

4557646 9

Case 7:21-cv-00155-BO     Document 1     Filed 09/13/21     Page 9 of 19

1-5, 10 and 15 of the '052 Patent.





4557646                                10

Case 7:21-cv-00155-BO     Document 1     Filed 09/13/21     Page 10 of 19







4557646 11



- Updates like an app on your phone.

No false stops from heavy breathing or crowd noise.

- Powered by built-in, rechargeable lithium batteries.

4557646

12

48. Despite their knowledge of Plaintiff's '052 Patent, Defendants have directly infringed the '052 Patent in complete and reckless disregard of Plaintiff's patent rights.

49. As such, Defendants have acted recklessly and continue to willfully, wantonly, and deliberately engage in acts of infringement of the '052 Patent, justifying an award to Plaintiff of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285. Plaintiff similarly is entitled to an injunction precluding Defendants from continued infringement of the '052 Patent.

## COUNT II

*Indirect Infringement of the '052 Patent pursuant to 35 U.S.C. § 271(b)*

50. Plaintiff repeats, realleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint, as if fully set forth herein.

51. Defendants have induced and continue to induce infringement of at least Claims 1-5, 10 and 15 of the '052 Patent under 35 U.S.C. § 271(b).

52. In addition to directly infringing the '052 Patent, Defendants have indirectly infringed the '052 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing, encouraging, and/or requiring customers, purchasers, and users to directly infringe the '052 Patent, either literally or under the doctrine of equivalents, by making, using, offering for sale, and/or selling the Accused Products. Defendants knew or were willfully blind to the fact that they were inducing others, including customers, purchasers, and users, to directly infringe Claims 1-5, 10 and 15 of the '052 Patent by making, using, offering for sale, or selling the Accused Products.

53. Defendants knowingly and actively aided and abetted the direct infringement of the '052 Patent by instructing and/or encouraging their customers, purchasers, and users to use the Accused Products in violation of the '052 Patent. Such instructions and encouragement included, but are not limited to, advertising and promoting the use of the Accused Products, in an infringing manner.

54. On information and belief, Defendants maintain and update an HTTP site advertising and offering for sale the Accused Products, at

https://www.whistlestopworks.com/product.[4]

55. Defendants are actively promoting the Accused Products by, at least, presenting the Accused Products to potential customers at events such as basketball camps and on the internet.

56. Defendants' infringement of the '052 Patent has injured and continues to injure Plaintiff in an amount to be proven at trial, but not less than a reasonable royalty.

57. Despite their knowledge of Plaintiff's '052 Patent, Defendants have instructed, directed, encouraged, and/or required customers, purchasers, and users to directly infringe the '052 Patent in complete and reckless disregard of Plaintiff's patent rights.

58. As such, Defendants have acted recklessly and continue to willfully, wantonly, and deliberately engage in acts of indirect infringement of the '052 Patent, justifying an award to Plaintiff of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285. Plaintiff similarly is entitled to an injunction precluding Defendants from continued indirect infringement of the '052 Patent.

## COUNT III

### *Direct Infringement of the '300 Patent pursuant to 35 U.S.C. § 271(a)*

59. Plaintiff repeats, realleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint, as if fully set forth herein.

60. On information and belief, Defendants have directly infringed, and continue to directly infringe at least Claims 1-4 of the '300 Patent in violation of 35 U.S.C. § 271(a).

61. Defendants' infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

62. Defendants' acts of making, using, importing, selling, and/or offering for sale infringing products have been without the permission, consent, authorization, or license of Plaintiff.

---

[4] As of at least September 1, 2021 at 1:00p.m. EDT.

63. Defendants' infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of the Accused Products.

64. The Accused Products embody the patented invention of the '300 Patent and infringe the '300 Patent because they constitute a system for remotely starting and stopping a time clock in an environment with a plurality of distinct activation signals and noises.

65. On information and belief, every element of at least Claims 1-4 of the '300 Patent is practiced by the Accused Products.

66. For example, on information and belief, the Accused Products are a sports event time clock remote control system that comprises a game clock, a plurality of whistles to be carried by a plurality of officials, with each whistle providing a sonic signal when blown by an official.

67. On information and belief, the Accused Products include a means to analyze sonic signals and determine which official activated the whistle by analyzing harmonic frequencies, including a dominant harmonic frequency. On information and belief, then, the harmonics sensed are averaged and those averaged harmonics are used for a preset related to a whistle, so that when the whistle is blown, it is detected.

68. On information and belief, the Accused Products send these signals to a base station to store those sonic fingerprint signals, which are generated during a sports event, to establish a match used for actuation of a game clock. On information and belief, the Accused Products perform analysis using a band pass filter, to generate a sonic fingerprint, that is matched with a prerecorded sonic fingerprint to identify the official who blew the whistle and record the identity of that official and the time the whistle was blown. On information and belief, each official will calibrate their whistle before commencement of the sports event.

69. Defendants' infringement of the '300 Patent has injured and continues to injure Plaintiff in an amount to be proven at trial, but not less than a reasonable royalty. Despite their knowledge of Plaintiff's '300 Patent, Defendants have directly infringed the '300 Patent in complete and reckless disregard of Plaintiff's patent rights. As such, Defendants have acted

recklessly and continue to willfully, wantonly, and deliberately engage in acts of infringement of the '300 Patent, justifying an award to Plaintiff of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285. Plaintiff similarly is entitled to an injunction precluding Defendants from continued infringement of the '300 Patent.

## COUNT IV

*Indirect Infringement of the '300 Patent pursuant to 35 U.S.C. § 271(b)*

70. Plaintiff repeats, realleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint, as if fully set forth herein.

71. Defendants have induced and continue to induce infringement of at least Claims 1-4 of the '300 Patent under 35 U.S.C. § 271(b).

72. In addition to directly infringing the '300 Patent, Defendants have indirectly infringed the '300 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing, encouraging, and/or requiring customers, purchasers, and users to directly infringe the '300 Patent, either literally or under the doctrine of equivalents, by making, using, offering for sale, and/or selling the Accused Products. Defendants knew or were willfully blind to the fact that they were inducing others, including customers, purchasers, and users, to directly infringe Claims 1-4 of the '300 Patent by making, using, offering for sale, or selling the Accused Products.

73. Defendants knowingly and actively aided and abetted the direct infringement of the '300 Patent by instructing and/or encouraging their customers, purchasers, and users to use the Accused Products in violation of the '300 Patent. Such instructions and encouragement included, but are not limited to, advertising and promoting the use of the Accused Products, in an infringing manner.

74. On information and belief, Defendants maintain and update an HTTP site advertising and offering for sale the Accused Products, at https://www.whistlestopworks.com/product.[5]

---

[5] As of at least September 1, 2021 at 1:00p.m. EDT.

75. Defendants are actively promoting the Accused Products by, at least, presenting the Accused Products to potential customers at events such as basketball camps and on the internet

76. Defendants' infringement of the '300 Patent has injured and continues to injure Plaintiff in an amount to be proven at trial, but not less than a reasonable royalty. Despite their knowledge of Plaintiff's '300 Patent, Defendants have instructed, directed, encouraged, and/or required customers, purchasers, and users to directly infringe the '300 Patent in complete and reckless disregard of Plaintiff's patent rights. As such, Defendants have acted recklessly and continue to willfully, wantonly, and deliberately engage in acts of infringement of the '300 Patent, justifying an award to Plaintiff of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285. Plaintiff similarly is entitled to an injunction precluding Defendants from continued infringement of the '300 Patent.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendants as follows:

A. Finding that Defendants are and have been directly and indirectly infringing the '052 Patent;

B. Finding that Defendants are and have been directly and indirectly infringing the '300 Patent;

C. A preliminary and permanent injunction enjoining Defendants and their affiliates, employees, agents, officers, directors, attorneys, successors, and assigns, and all those acting on behalf of or in active concert or participation with any of them, from infringing the '052 Patent, directly or indirectly;

D. A preliminary and permanent injunction enjoining Defendants and their affiliates, employees, agents, officers, directors, attorneys, successors, and assigns, and all those acting on behalf of or in active concert or participation with any of them, from infringing the '300 Patent, directly or indirectly;

E. Requiring that Defendants render a full and complete accounting to Plaintiff for Defendants' profits, gains, advantages or the value of business opportunities received from their acts of infringement;

F. Requiring that Defendants pay Plaintiff damages, not less than a reasonable royalty, as Plaintiff shall prove at trial against Defendants, together with interest and costs as fixed by the Court, that is adequate to compensate Plaintiff for Defendants' direct and indirect infringement of the '052 Patent;

G. Requiring that Defendants pay Plaintiff damages, not less than a reasonable royalty, as Plaintiff shall prove at trial against Defendants, together with interest and costs as fixed by the Court, that is adequate to compensate Plaintiff for Defendants' direct and indirect infringement of the '300 Patent;

H. A determination that Defendants' infringement has been willful, wanton, and deliberate and that the damages that Defendants must pay Plaintiff be trebled pursuant to 35 U.S.C. § 284;

I. Finding the case exceptional under 35 U.S.C. § 285 and requiring that Defendants pay Plaintiff all of his attorneys' fees and costs and expenses in this action;

J. Awarding Plaintiff prejudgment interest, post-judgment interest, and costs; and

K. An order awarding Plaintiff such other and further relief as the Court may deem appropriate.

<u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury on all issues so triable.

DATED: September 13, 2021     Respectfully submitted,

By: /s/ *James L. Lester*
James L. Lester
MacCord Mason PLLC
2733 Horse Pen Creek Rd., Suite 101
Greensboro, NC 27410
jlester@maccordmason.com
Telephone: (336) 360-7016
Fax (336) 271-2830
NC Bar No. 15715
Local Rule 83.1(d) Counsel for Plaintiff

Ronald C. Finley (*special appearance pending*)
Remington A. Lenton-Young (*special appearance pending*)
Hoge, Fenton, Jones, and Appel, Inc.
55 South Market Street, Ste. 900
San Jose, CA 95113
ronald.finley@hogefenton.com
remington.lenton-young@hogefenton.com
Telephone (408) 287-9501
Fax (408) 287-2583
CA Bar Nos. 200549 and 295392